**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arthur James WESSELS,**
**Defendant–Appellant.**

No. 93–2678.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1993.

Decided Dec. 16, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 9, 1994.

Dean Stowers, Des Moines, IA, argued, for defendant-appellant.

Counsel who presented argument on behalf of the appellee was Clifford D. Wendel, Des Moines, IA, argued (Christopher D. Hagen and Ronald M. Kayser, on the brief), for plaintiff-appellee.

Before FAGG and WOLLMAN, Circuit Judges and WRIGHT,* District Judge.

SUSAN WEBBER WRIGHT, District Judge.

Arthur James Wessels pleaded guilty to conspiracy to distribute marijuana and was convicted of conspiracy to distribute methamphetamine and of using and carrying a firearm in relation to a drug trafficking crime. He was sentenced to 240 months in prison on the conspiracy count and sixty months in prison on the firearms count, the terms to be served consecutively. He now appeals both the judgment of conviction and the sentence. We affirm his conviction on both counts and remand for further findings on the type of methamphetamine involved.

## I.

On December 17, 1992, the grand jury filed a two-count indictment charging Wessels with conspiracy to distribute marijuana or methamphetamine and with using and carrying a firearm in relation to a drug trafficking crime. The indictment provided as follows:

* The HONORABLE SUSAN WEBBER WRIGHT, United States District Judge for the Eastern District of Arkansas, sitting by designation.

### Count 1

From on or about the 1st day of January, 1989 up to and including the 17th day of December, 1992, the exact dates to the Grand Jury unknown, in the Southern District of Iowa and elsewhere, two or more persons, known and unknown to the Grand Jury, including ARTHUR JAMES WESSELS, did conspire to commit an offense against the United States, namely to knowingly and intentionally distribute marijuana, a Schedule I controlled substance or a mixture or substance containing methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1).

This is a violation of Title 21, United States Code Section 846.

THE GRAND JURY FURTHER CHARGES:

### Count 2

That from on or about the 1st day of January, 1989 up to and including the 17th day of December, 1992, the exact dates to the grand jury unknown, in the Southern District of Iowa and elsewhere, defendant, ARTHUR JAMES WESSELS did knowingly and unlawfully during and in relation to a drug trafficking crime, to wit: conspiracy to distribute marijuana, a Schedule I controlled substance or a mixture or substance containing methamphetamine, a Schedule II controlled substance, use or carry a firearm.

This is a violation of Title 18, United States Code, Section 924(c).

Wessels was arraigned on January 4, 1993, and pleaded not guilty. On March 1, 1993, he entered a guilty plea to the marijuana conspiracy and went to trial on the methamphetamine portion of count 1 and on the weapons count. The jury found Wessels guilty on both counts and the district court sentenced and entered judgment against Wessels on June 22, 1993.

### II.

For his first point on appeal, Wessels challenges his conviction under count 2 of the indictment. He contends there was insufficient evidence to convict him of use of a firearm in relation to a drug conspiracy and that the indictment was vague and testimony was admitted in violation of the bill of particulars. He also argues the district court erred in failing to instruct the jury on abandonment of a conspiracy.

Upon Wessels' motion and pursuant to an order of the district court, the government filed a bill of particulars on the weapons count. This bill of particulars provided the following with regard to Wessels' use of a firearm:

1. Each and every time the defendant, Arthur James Wessels sold methamphetamine or marijuana to Steven Grade, Brett Rork or Sharon Jones, he had a gun present.

2. During the search of his residence on or about February 25, 1992, guns were found during the search of the defendant's residence and cabin.

On the eve of trial, the government provided Wessels with a memorandum which set forth further details as to its witnesses' expected testimony concerning possession of firearms during various drug transactions. The memorandum stated:

2. Steve Grade will testify that between the first of January, 1990, and June 26, 1991, when he was arrested, he and Art Wessels trafficked in methamphetamine on the average of one to two times per week. Fifty percent of the time, Grade would travel to Kirkville, Iowa. Wessels always travelled with a weapon under his seat. Grade believes the firearm was a large caliber revolver. Wessels kept a loaded rifle by the door at his cabin in Eddyville as did he likewise at his house in R.R. Oskaloosa. In the winter of 1990, Wessels arrived at Grade's house carrying two MAC 10 semi automatic weapons strapped around his neck. On that occasion, Wessels and Grade did a methamphetamine transaction.

3. Further, Sharon Jones will likewise testify about the incident in the winter of 1990 when Wessels arrived at the Grade residence in possession of the MAC 10 semi automatic weapon.

Wessels' motion to dismiss count 2 for failure to comply with the court's order granting a bill of particulars and for variance between the bill of particulars and the indictment was denied.[1]

■ At trial, the evidence showed that numerous firearms were seized in the search of Wessels' residence on February 26, 1992, and that he was in possession of an automatic weapon in the winter of 1990 at the trailer home of friends in Kirkville, Iowa. Wessels argues there was insufficient evidence to show that these firearms were used in the alleged drug conspiracy and that all the major players except for himself had been arrested or had dropped out of the conspiracy by the summer of 1991. The government maintains, and this court agrees, that mere inactivity does not terminate a conspiracy and that Wessels has the burden of proving withdrawal from a conspiracy. *United States v. Askew,* 958 F.2d 806, 812 (8th Cir. 1992) (quoting *United States v. Boyd,* 610 F.2d 521, 528 (8th Cir.1979)). Wessels did not present evidence that he had affirmatively withdrawn from the conspiracy. He took the position that because all of his alleged coconspirators had withdrawn, abandoned, or ceased their activities by the summer of 1991 there was no conspiracy.

■ A jury verdict must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. *United States v. Sileven,* 985 F.2d 962, 967 (8th Cir.1993). This Court finds that substantial evidence supports the jury verdict. In addition to the search of Wessels' residence which revealed marijuana, drug notes, and a scale, the evidence showed that while several members of the conspiracy had been apprehended, not all of the participants were in custody or affirmatively out of the conspiracy at the time of the search. At the February 26 search, a loaded derringer was found on a shelf in Wessels' basement, a loaded .38 caliber revolver was found two to three feet from marijuana, and another loaded revolver was found in his garage. From this evidence, the jury could reasonably conclude not only that the conspiracy was still in existence but also that the firearms were used in connection with the conspiracy.

■ Wessels also contends that the firearms possession at the trailer in the winter of 1990 was neither presented to the grand jury nor specified in the bill of particulars. He argues the indictment was unconstitutionally vague and that evidence outside the scope of the indictment and the bill of particulars was submitted to the petit jury.

■ An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. *United States v. Young,* 618 F.2d 1281, 1286 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980). An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted. *Id.* Likewise, the primary purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. *United States v. Garrett,* 797 F.2d 656, 665 (8th Cir.1986). A bill of particulars, however, is not a proper tool for discovery, *United States v. Hester,* 917 F.2d 1083, 1084 (8th Cir.1990); it is not to be used to provide detailed disclosure of the government's evidence at trial. *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399, 405 (4th Cir.1985).

■ Wessels urges that the grand jury did not hear the same evidence as the petit jury. The only evidence presented to the grand jury, Wessels argues, was that firearms were discovered at his house on February 26, 1992; yet the indictment alleges weapon possession from January 1989 to December 1992. He contends the government was erroneously allowed to broaden the in-

---

1. Wessels had earlier moved to dismiss count 2 under Fed.R.Crim.P. 12(b)(2), arguing that the indictment was vague.

dictment to include events other than those of February 1992.

> [T]he acts proved at trial may not vary from those charged in the indictment. A variance 'occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment.' Reversal is not required if the variance is harmless, that is, if 'the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial.'

*United States v. Huntsman,* 959 F.2d 1429, 1435 (8th Cir.1992) (quoting *United States v. Begnaud,* 783 F.2d 144 (8th Cir.1986)).

> Tests of fatal variance are: Was defendant misled? Will defendant be protected against a future proceeding? 'Upon the question of variance between indictment and proofs, the controlling consideration should be whether the charge was fairly and fully enough stated to apprise defendant of what he must meet, and to protect him against another prosecution, and whether those particulars in which the proof may differ in form from the charge support the conclusion that respondent could have been misled to his injury.'
>
> [T]he 'true inquiry ... is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused.'

*United States v. West,* 549 F.2d 545, 552 (8th Cir.1977) (citations omitted). *See also United States v. Yeo,* 739 F.2d 385, 387 (8th Cir.1984) (where there is a variance between the facts alleged in the indictment and the evidence offered at trial, the issue is one of fairness, and actual prejudice must be considered).

The grand jury was presented evidence of gun possession acquired through the search of Wessels' residence in February 1992; this evidence was sufficient to support the indictment. The bill of particulars set out that each and every time Wessels sold methamphetamine or marijuana to Grade, Rork, or Jones, he had a gun present and that guns were found in a search of his residence in February 1992. The government subsequently presented to the petit jury evidence showing additional instances of gun use during the conspiracy, i.e. the winter 1990 gun possession. This does not amount to a "variance" as the evidence did not prove facts "materially different" from those alleged in the indictment but did prove other facts in addition to those presented to the grand jury. The indictment and the bill of particulars fully and fairly apprised Wessels of the charges he would face at trial. In addition, Wessels failed to show how he was actually prejudiced.

■ Wessels further argues that the district court erred in not giving his proposed jury instruction concerning abandonment of a conspiracy. Criminal defendants are entitled to an instruction on their theory of defense if the proposed instruction is a correct statement of the applicable law and is supported by the evidence. *United States v. Austin,* 915 F.2d 363, 365 (8th Cir.1990). The district court has wide discretion in deciding which supplemental instructions to submit to the jury. *United States v. Blumberg,* 961 F.2d 787, 790 (8th Cir.1992). Wessels' abandonment theory was based upon his argument that there was no conspiracy because there were no remaining active co-conspirators. The evidence, however, was not sufficient to allow a reasonable jury to find Wessels had abandoned the conspiracy, and we find the district court committed no error in denying the instruction.

### III.

■ For his second point, Wessels argues the district court violated his Fifth Amendment right against double jeopardy by allowing the government to proceed with a trial on the methamphetamine portion of count 1 after he had pleaded guilty to conspiracy to distribute marijuana under count 1. Wessels contends his right against double jeopardy was violated because he was convicted twice on the same count: once when the court accepted his guilty plea to conspiracy to distribute marijuana and again when he was tried on conspiracy to distribute methamphetamine. He argues that a count can-

not contain more than one charge, and that the guilty plea should therefore have disposed of count 1 entirely.

In support of his argument, Wessels cites *United States v. Owens,* 904 F.2d 411 (8th Cir.1990) (*Owens*). The indictment in *Owens* charged the defendant with conspiracy to distribute and possess with intent to distribute "methamphetamine/amphetamine." The jury instructions repeated the ambiguous designation "methamphetamine/amphetamine" and the jury returned a general verdict of guilty. The problem then arose as to which substance should be used by the district court in determining the correct sentencing range. The guidelines provided disparate sentencing ranges for amphetamine and methamphetamine, with amphetamine having the lower range and the jury did not indicate which drug was the object of the conspiracy. Nevertheless, the district court concluded that methamphetamine was the object of the conspiracy and sentenced the defendant on that basis.

On appeal, we held that the sentence should have been calculated on the basis that the drug involved was amphetamine. *Id.* at 413–14. We concluded that by instructing the jury on an "either/or" basis with respect to the two substances and by failing to enable the jury to indicate by use of a special verdict form which of the two substances it found the conspiracy to have involved, the district court elicited an ambiguous verdict of guilty. *Id.* at 414. Under such circumstances, the court erred in sentencing the defendant based on the alternative which yielded a higher sentencing range. *Id.* at 414–15.

■ Wessels' reliance on *Owens* is misplaced. *Owens* does not prohibit the government from charging a defendant in the alternative so long as the verdict on each allegation is unanimous and independent of the other. 904 F.2d at 414; *see also United States v. Page–Bey,* 960 F.2d 724, 727–728 (8th Cir.1992) (special verdict form not required where indictment charged defendant with conspiracy to distribute both cocaine and heroin when evidence indicated defendant supplied both and it would have made no difference in defendant's sentence) (per

curiam). Here, there is no ambiguity in the jury's verdict. Because Wessels had already pleaded guilty to the marijuana conspiracy, the jury only needed to determine whether methamphetamine was also an object of the conspiracy, which it did. Accordingly, there was no violation of Wessels' Fifth Amendment rights.

## IV.

■ For his final point, Wessels raises several challenges to his sentence. He first argues that the enhancement provision for prior drug convictions set forth in 21 U.S.C. § 841(b) does not apply to persons convicted under the drug conspiracy statute, 21 U.S.C. § 846. Citing *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), Wessels argues that only the penalties applicable to the offense that was the object of the conspiracy, and not those applicable to the offender, apply by reference from § 846. This argument is without merit. As we noted in *United States v. Askew,* 958 F.2d at 812, the drug conspiracy statute has been amended since *Bifulco* to expressly provide that convicted drug conspirators are "subject to the same penalties as those prescribed for the [underlying substantive] offense." Thus, the enhancement provision of § 841(b) applies whether the conviction was for violating the substantive statute or for conspiring to violate the substantive statute.

■ Wessels also argues the district court should not have applied the penalty enhancement because of an oral plea agreement upon which he detrimentally relied. Apparently, Wessels and the government had entered into an oral agreement whereby in exchange for Wessels' cooperation, the government would move for a reduction in Wessels' sentence. However, the government subsequently informed Wessels that it would not go through with the agreement and proceeded to file a notice of enhancement after learning that Wessels had a prior felony drug conviction. Wessels argues that the government breached the plea agreement, and in so doing, engaged in misconduct, gained an unfair advantage, and deprived him of due process and the effective assistance of counsel.

Wessels is not entitled to relief due to the government's withdrawal of its consent to the plea agreement. Whatever benefits Wessels intended to reap as a result of the agreement were entirely contingent upon the approval of the district court. *United States v. Walker,* 927 F.2d 389, 390 (8th Cir.1991).

> Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.

*United States v. McGovern,* 822 F.2d 739, 744 (8th Cir.) (*quoting United States v. Ocanas,* 628 F.2d 353, 358 (5th Cir.1980)), *cert. denied,* 484 U.S. 956, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987).

Wessels was not justified in relying on the terms of the plea agreement because it had not been approved and accepted by the district court.[2] In addition, he has not shown that the government gained an unfair advantage over him in withdrawing its consent to the agreement, such as by the use at trial of statements made during the course of the plea negotiations, nor has he shown a deprivation of due process in his subsequent trial. Wessels was not prejudiced by the government's withdrawal of its consent to the plea agreement and the district court committed no error when it increased the statutory penalty on account of Wessels' prior felony drug conviction.

■ Wessels next argues the indictment was duplicitous and that the district court thus erred in utilizing the statutory penalties applicable to the conspiracy to distribute methamphetamine charge as opposed to those applicable to the marijuana conspiracy.

In support of this argument, Wessels again cites *Owens.* However, we have already determined there was no ambiguity in the jury's verdict and that the jury properly determined that methamphetamine was an object of the conspiracy. Accordingly, the district court did not err in utilizing the penalties applicable to the charge of conspiracy to distribute methamphetamine.

■ Wessels next argues the district court erred in determining that the penalties set forth in § 841(b) are based upon the amount of drugs attributable to the entire conspiracy. He argues that the penalty should be determined by using the greatest amount of any single transaction in the course of the conspiracy rather than by aggregating small amounts involved in numerous transactions. He additionally argues that the district court erred in determining the quantity of drugs involved based of the testimony of witness Steve Grade. We reject both of these arguments.

■ One of the measures employed in determining the severity of a drug conspiracy offense is the amount of narcotics involved in the entire conspiracy. *United States v. Savage,* 891 F.2d 145, 151 (7th Cir.1989). Indeed, the amount of narcotics considered in sentencing for conspiracy includes not only the amount involved in the transactions that were known to the defendant but also those that were reasonably foreseeable, reflecting the fact that each conspirator is responsible for the acts and offenses of each one of his co-conspirators committed in furtherance of the conspiracy. *Id. See also United States v. Tolson,* 988 F.2d 1494, 1502 (7th Cir.1993) (finding that the defendant may be held responsible for all marijuana transactions [18,-500 pounds] from 1986 through 1988 that were reasonably foreseeable to him). Wessels cites no authority requiring the court to determine the penalty by using only the greatest amount of any single transaction in the course of the conspiracy and nothing in § 841(b) imposes such a requirement. The district court properly determined that the

---

**2.** The district court denied Wessels' pretrial motion to enforce the plea agreement, stating that it cannot accept a plea of guilty based upon a plea agreement that asserts facts the court knows to be false, and that it would not have accepted the plea agreement in this case because it omitted the notice of prior conviction.

set forth in § 841(b) are based upon the amount of drugs attributable to the entire conspiracy.

In addition, the district court did not commit error in its determination that Wessels was responsible for three and one-half pounds of methamphetamine. The court credited Grade's testimony that he personally supplied Wessels with three and one-half to four pounds of methamphetamine during the course of their drug trafficking activities. Grade's testimony, which was based upon his own personal knowledge, clearly established the amount of drugs involved. *See United States v. Galvan*, 961 F.2d 738, 740 (8th Cir.1992) (trial testimony used to estimate the amount of uncharged drugs must clearly establish either the dates of the transactions or the amounts of drugs involved) (citations omitted). Although Wessels argues that Grade's testimony should not have been credited, witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal. *United States v. Candie*, 974 F.2d 61, 64 (8th Cir.1992) (citations omitted). We conclude that the district court's findings regarding the quantity of methamphetamine involved were reasonably supported by the evidence and are not clearly erroneous.

However, we do find the district court erred in taking judicial notice that the methamphetamine involved in this case was D-methamphetamine rather than L-methamphetamine.[3] The court acknowledged at the sentencing hearing that the government failed to present evidence on this issue but noted that it had been involved in some 50 methamphetamine cases in the State of Iowa, none of which involved L-methamphetamine. Stating that under such circumstances the defense was obligated to do more than simply say the government had not proven that the substance was D-methamphetamine, the court, over Wessels' objections, took judicial notice that the methamphetamine involved was D-methamphetamine. This was error. While irrelevant to the question of guilt, the type of methamphetamine involved was essential to the calculation of the proper sen-

tence, and the government rather than Wessels carried the burden of producing evidence on this issue. *United States v. Patrick*, 983 F.2d 206, 208 (11th Cir.1993) (citations omitted). *See also United States v. Koonce*, 884 F.2d 349, 353 (8th Cir.1989). Because the district court did not receive any evidence as to the type of methamphetamine involved, we remand for further findings on this issue.

V.

In sum, we affirm Wessels' conviction on both counts and remand for further proceedings consistent with this opinion.

---

**3.** Under the sentencing guidelines, the involvement of D-methamphetamine requires a sentence that is significantly more severe than that for an equal quantity of L-methamphetamine. U.S.S.G. § 2D1.1. *See United States v. Koonce*, 884 F.2d 349, 352 n. 4 (8th Cir.1989).